HERBERT LUDY *v.* STATE OF INDIANA.

[No. 1175S314. Filed September 13, 1976.]

*Richard L. Milan, Craven & Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged by information in two counts. Count I, commission of a felony (robbery) while armed; and Count II, inflicting physical injury in the commission of a robbery. Trial by jury resulted in verdicts of guilty on each count. Appellant was sentenced to imprisonment for a term of 20 years on Count I and to imprisonment for life on Count II.

The record reveals the following: At approximately 7:00 p.m. on December 23, 1974, Clyde M. Woorley returned to his home at 3540 North Pennsylvania Street in Indianapolis. As he got out of his car behind his apartment Mr. Woorley noticed two men approaching him. As Mr. Woorley turned from the car he saw that one man had a gun and the other was standing to the right and the rear of him. The man with the pistol dressed in an army fatigue jacket with the hood drawn tightly around his face demanded that Woorley give him his money. Woorley responded that he had only $2.00 at which time the man with the gun advanced

and pointed the gun at Woorley's head. Woorley swung at the man with the bag of dog food he was carrying. The man jumped back and fired his weapon hitting Woorley in the left side. The force of the shot knocked Woorley against a telephone pole where he slumped to the ground. The second man ran away but the man with the gun stood there momentarily.

Robert Woorley, a brother of the victim who lived with him, heard loud voices demanding money and heard a gun go off. He opened the door and saw his brother slumped against a telephone pole and a man with a pistol standing over him. Robert Woorley got his shotgun, returned to the door and attempted to shoot but the gun misfired.

The area was well lighted. Robert Woorley was within 15 feet of the robber and the victim, Clyde Woorley, was within six feet of him. Although the robber's face was partially covered by the hood on the jacket, both Woorleys were able to see his features.

At about 10:00 that night a police officer asked Robert Woorley to come to 34th Street and Meridian to identify a suspect. Robert Woorley identified appellant as the robber with the gun. At trial Robert Woorley identified a photo of appellant from a group of six to eight as that of one of the robbers. At trial both of the Woorleys identified appellant as the assailant.

Appellant claims the trial court erred in determining that he had sufficient competency to understand the nature of the charges against him and to aid his attorney in his defense. Appellant calls our attention to the record revealing that two different judges presided over the competency hearing. Appellant filed a suggestion of insanity following which the court appointed two physicians pursuant to IC 35-5-3.1-1 (Burns 1975). On March 5, 1975, special judge Robert Hughes heard the testimony of Dr. Donahue. On March 19, 1975, the regular judge of the court, John B. Wilson, heard the testimony of Dr. Nye. Following these hearings the regular judge, Wilson,

found that the defendant had sufficient comprehension under the terms of the statute.

In his brief appellant states that this was done ". . . despite Dr. Donahue's report which stated: 'This patient appears to have a personality disorder of long standing, with prominent sociopathic traits.' " Appellant neglects to state that in the same paragraph from which this quote is lifted, Dr. Donahue continues by saying, "In my opinion he was of sound mind at the time of commission of the alleged offense, and he has comprehension sufficient to understand the nature of the present proceedings and to aid his attorney in his defense." Dr. Donahue testified to this same set of facts in the hearing before Judge Hughes.

When Dr. Nye testified on the 19th of March, counsel for appellant specifically stated that he had no objection to Judge Wilson conducting the hearing after Judge Wilson reminded him that Judge Hughes had taken the testimony of Dr. Donahue while sitting as judge pro tempore for Judge Wilson. Counsel for the appellant further stipulated ". . . that the evidence heard in the first hearing can be considered by the court and also the written report of the doctor that the court did not hear." In view of this procedure, which we consider to be entirely proper, and in view of the fact that Dr. Nye also testified that appellant had sufficient mental capacity to stand trial, we hold that the trial court did not err in finding that the appellant had the mental capacity to stand trial at that time.

Appellant further argues that because appellant's mother testified that he was "mentally ill," it was error to place him on trial. This was simply evidence which tended to contradict that given by the two psychiatrists. As we have repeatedly stated, this Court will not weigh the evidence. *Winston* v. *State*, (1975) 263 Ind. 8, 323 N.E.2d 228, 45 Ind. Dec. 733.

Appellant next claims the verdicts are not supported by the evidence. He claims the record is insufficient to show proof of

the identification of the appellant and urges that the circumstances surrounding the robbery, especially that fact that the hood of the field jacket was closely drawn around the robber's face, precluded an identification of anything but the field jacket which is not an unusual article of clothing. Both the victim of the robbery and his brother testified they were able to discern the facial features of the appellant and thus identified him as the assailant. Again, we will not reweigh the evidence nor determine the credibility of the witnesses. *Winston* v. *State, supra.* The evidence in this record is sufficient from which the jury could determine that the appellant was in fact the assailant.

The trial court is in all things affirmed.

Arterburn, DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 354 N.E.2d 211.